Rachal LAUT, f/k/a Govro, and John
M. Soellner, Appellants,

v.

CITY OF ARNOLD, Respondent.

No. ED 99424.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 3, 2013.

Rehearing Denied Jan. 13, 2014.

W. Bevis Shock, Hardy C. Menees, St. Louis, MO, for appellants.

Robert K. Sweeney, Hillsboro, MO, for respondent.

## Introduction

GARY M. GAERTNER, Jr., Judge.

Rachel Laut (Laut) and John Soellner (Soellner) (collectively referred to as Appellants) appeal the trial court's summary judgment in favor of the City of Arnold (City), on Appellants' petition seeking disclosure of documents under Missouri's Sunshine Law, Chapter 610, RSMo. (Supp. 2012).[1] We find that the trial court did not have a sufficient record from which to grant summary judgment regarding all of the documents Appellants requested. We also find a genuine factual dispute exists regarding whether an Internal Affairs report prepared by the City here is exempt from disclosure under the Sunshine Law. We affirm in part, reverse in part, and remand.

## Background

Laut and Soellner each had some form of a personal relationship with one or more employees of the City's Police Department. Appellants developed a good faith belief that one or more of these employees had improperly accessed Appellants' confidential records contained in an electronic law enforcement database called the Regional Justice Information System (REJIS). In September of 2010, Laut made a complaint to the City regarding two City Police Department employees, dispatcher Linda Darnell (Darnell) and Sergeant Darren Rodgers[2] (Rodgers), and their access to REJIS. The City's Chief of Police, Robert Shockey (Chief Shockey), subsequently ordered an Internal Affairs investigation for the purpose of determining the fitness of Darnell and Rodgers to perform their job duties.

On October 11, 2010, Appellants' counsel sent a letter to the City requesting disclosure of several documents pursuant to Section 610.100 of Missouri's Sunshine Law, including reports and records regarding investigations and communications about Darnell's and Rodgers' use of REJIS, background checks of Appellants, and any subsequent disciplinary action. The letter stated Appellants' request was for the purpose of investigating civil claims. On October 14, 2010, the City responded by letter, informing Appellants that there was no criminal investigation performed regarding Darnell and Rodgers. The letter also stated that the records responsive to Appellants' request were exempt from disclosure under Section 610.021.3 of the Sunshine Law.

1. All statutory references are to RSMo. (Supp. 2012) unless otherwise indicated.

2. We note that Rodgers' name has the spelling "Rogers" in Appellants' documents throughout the record, but that the parties refer to the same individual. We use the spelling contained in the City's documents as these are provided by Rodgers' employer and more likely to reflect the correct spelling.

Appellants filed a petition requesting that the trial court order the City to produce the requested documents and find the City liable for civil penalties as well as costs and reasonable attorney's fees under Section 610.100.6, because the City purposely violated the Sunshine Law. Both parties moved for summary judgment. The City did not provide the responsive documents to the trial court for in camera review. The trial court denied Appellants' motion and granted the City's motion for summary judgment, finding that the information sought by Appellants was exempt from disclosure under Section 610.021, subsections 3 and 13. Accordingly, the trial court also denied Appellants' request for civil penalties, costs, and attorney's fees. This appeal follows.

## Standard of Review

Our review of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We uphold the summary judgment if (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* We view the facts and supporting affidavits in the light most favorable to the non-movant, and we accord the non-movant the benefit of all reasonable inferences from the record. *Id.* "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's summary judgment." *Id.*

## Discussion

Appellants' sole point on appeal is that the trial court erred as a matter of law in granting summary judgment in favor of the City. Appellants argue the information they sought was not closed information because the underlying conduct was criminal in nature, and the Sunshine Law requires disclosure of records regarding criminal investigations. Appellants also argue the trial court therefore erred in denying their request for costs and attorney's fees based on the City's violation of the Sunshine Law. We address each of these arguments in turn.

## Sunshine Law

■ The overarching purpose of the Sunshine Law is one of open government and transparency. *Smith v. Sheriff,* 982 S.W.2d 775, 778 (Mo.App. E.D.1998). **Section 610.011.1** states: "Sections 610.010 to 610.200 shall be liberally construed and then-exceptions strictly construed to promote this public policy."

Specifically, Appellants requested two types of documents, investigative reports and any other records,[3] regarding any of the following:

1. Improper use of REJIS by Darnell or Rodgers, limited to improper use related to Appellants,

2. Communications of City employees with other law enforcement agencies regarding background checks of Appellants,

3. Reasons for employment termination of Darnell, specifically as it relates to Appellants, with any other reasons redacted, and

4. Reasons for employment disciplinary action of Rodgers, with any other reasons redacted.

---

**3.** Appellants also requested incident reports, but the City responded that there were no existing incident reports. Because this statement is undisputed in the record, we do not discuss incident reports here. *ITT Commer-cial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993) (movant's facts taken as true on appeal unless contradicted by non-movant's response).

The City answered that the documents responsive to Appellants' request were exempt from disclosure under the Sunshine Law, Section 610.021.3, because they contained personal information about specific employees who were subject to discipline. The trial court agreed, specifically finding in its summary judgment that "[t]he information sought [was] exempt from disclosure" under Section 610.021.3 and 13 of the Sunshine Law.

■ **Section 610.021** contains a list of records that a governmental body may choose not to disclose. The relevant portions are as follows:

Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close ... records, to the extent they relate to the following:

(3) Hiring, firing, disciplining or promoting of particular employees by a public governmental body when personal information about the employee is discussed or recorded.... As used in this subdivision, the term **"personal information"** means information relating to the performance or merit of individual employees.

(13) Individually identifiable personnel records, performance ratings or records pertaining to employees or applicants for employment....

However, this section's exemptions must be read together with the rest of the Sunshine Law. The Missouri Supreme Court has noted the permissive language of Section 610.021, that the section is qualified by its own terms, and that it applies only where disclosure is not otherwise required by law. *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 414 (Mo. banc 2001) (finding exemptions not applicable where a particular type of document fits equally under

exemption and other section requiring disclosure). Thus, the threshold question for determining whether a document may be exempt from disclosure is first, whether disclosure of that document is otherwise required by law. For this, a court cannot look only at the information requested, but must also identity the types of documents at issue in order to determine first whether disclosure is mandated by law.

The trial court did not see the documents responsive to Appellants' request, nor did the court in its summary judgment analyze any sections of the Sunshine Law requiring disclosure as a threshold determination prior to considering the exemptions to disclosure under Section 610.021. Based on the record here, the relevant sections of the Sunshine Law, and their interpretation by the Missouri Supreme Court, we conclude the trial court did not have sufficient evidence to make the determination that the above exemptions in Section 610.021 apply as a matter of law to all of Appellants' requests. Because Appellants requested both public records in general and investigative reports in specific, we examine the Sunshine Law as it relates to each type of document.

*1. Public Records Generally*

■ **Section 610.010** defines a "public record" as "any record, ... retained by or of any public governmental body," and then includes a non-exhaustive list of examples. *See Samantar v. Yousuf,* 560 U.S. 305, 130 S.Ct. 2278, 2287, 176 L.Ed.2d 1047 (2010) (use of word "including" generally indicates non-exhaustive list). **Section 610.023.2** requires a public governmental body to make public records available to the public "for inspection and copying." However, these records are subject to the permissive exemptions listed in **Section 610.021.**[4] The Sunshine

4. Again, the relevant subsections here would

allow a public governmental body to withhold

Law also acknowledges in **Section 610.024** that a particular "public record" may contain both public information and some information exempt from disclosure under Section 610.021. In such a case, the government agency receiving the request is obligated to separate exempt and non-exempt information, and to disclose the portions of the documents that are open to the public under the statute. Section 610.024.1. *See also Tuft v. City of St. Louis,* 936 S.W.2d 113, 119 (Mo.App. E.D. 1996) (stating once record is found to fall under exemption, issue of whether record should be redacted and released is governed by Section 610.024.1). Finally, **Section 610.027.2** states, "[o]nce a party seeking judicial enforcement of Sections 610.010 to 610.026 demonstrates to the court that the body in question is subject to the requirements of [those sections] and has held a closed ... record ..., the burden of persuasion shall be on the body and its members to demonstrate compliance...."

■ In applying these provisions to Appellants' general request for records, the first two types of information Appellants requested concerned REJIS access and communication about background checks of Appellants. Neither of these specifically request "personal information" as defined by the exemption in Section 610.021.3, nor do they specifically target individual personnel records or information regarding job performance of the employees, under subsection 13. For example, a log showing a REJIS inquiry is not a personnel record or job performance rating. However, it is possible that records responsive to these requests could contain public records regarding disciplining or firing of employees, or individually identifiable personnel records. Section 610.021.3, 13.

exempt information. For example, a personnel record may also contain a record of REJIS inquiries. Again, under Section 610.024, even if records contain personal information that the City is permitted to withhold under an exemption, the City is obligated to make available the public portions of the records responsive to these two requests. *See State ex rel. Mo. Local Gov't Ret. Sys. v. Bill,* 935 S.W.2d 659, 664 (Mo.App. W.D.1996) (request for amounts of payments made to individuals was not request for personal information; even if records contained personal information, Section 610.024.1 required public body to redact and provide requested non-exempt information).

It is unclear from the record whether the City has public records, besides any investigative report, that contain information covered by Appellants' first two requests. Thus, the record is insufficient to support the trial court's summary judgment that any responsive records were exempt from disclosure. To the extent the City has withheld any documents responsive to these first two requests that contain both exempt and nonexempt information, upon the belief that the existence of some personal information allows closure of the entire document, the City must disclose any non-exempt portion under Section 610.024.1. Moreover, it was the City's burden under Section 610.027.2 to demonstrate compliance with the Sunshine Law once Appellants showed that the City was subject to the Sunshine Law and had closed records. Thus, we remand for the trial court to examine any public records containing information covered by Appellants' first two requests and to determine

whether the City has met its burden under Section 610.027.2.

■ Conversely, Appellants' remaining two requests as they relate to public records besides any investigative reports, seek records containing the reasons for discipline of Darnell and Rodgers. These two requests fall squarely under the Sunshine Law's exemption in Section 610.021, 3, regarding "firing [and] disciplining . . . of particular employees by a public governmental body when personal information about the employee is discussed or recorded." Again, "personal information" is "information relating to the performance or merit of the employees." Section 610.021.3. Appellants have pointed to no provision otherwise requiring disclosure of disciplinary records falling under only the general definition of public records.

Appellants argue that they limit their requests to reasons related to Appellants themselves and the alleged criminal activity, and thus they are entitled to the information; however, the exemptions in Section 610.021.3 and 13 make no exception requiring disclosure to third parties who may be part of the reason for discipline. Rather, the exemptions allow the public body to close disciplinary records at its discretion. This is precisely the kind of information sought by Appellants' third and fourth requests, and no genuine factual dispute exists regarding these two requests. The trial court did not err as a matter of law in determining that these two requests sought information from public records that the City may withhold as exempt. Thus, we affirm the trial court's summary judgment as it relates to any public records other than investigative reports, containing only information responsive to Appellants' requests for the reasons for discipline of Darnell and Rodgers.

### 2. *Investigative Reports*

Regarding Appellants' more specific request for investigative reports, the one document at issue here is an Internal Affairs report, which resulted from the Internal Affairs investigation Chief Shockey ordered upon receiving Laut's complaint. The City disagrees with Appellants' argument that the Internal Affairs report is an "investigative report" under the statutory definition. Based on the record here, we find a genuine factual dispute exists as to the nature of the Internal Affairs report, which precluded summary judgment regarding whether this report must be disclosed.

### a. *Relevant Law*

Section 610.100 of the Sunshine Law contains additional guidelines regarding this particular type of public record. **Section 610.100.1(5)** defines an "investigative report" as the following:

> [A] record, other than an arrest or incident report, prepared by personnel of a law enforcement agency, inquiring into a crime or suspected crime, either in response to an incident report or in response to evidence developed by law enforcement officers in the course of their duties.

The key aspect of an investigative report is that it is "directed to alleged criminal conduct." *Guyer*, 38 S.W.3d at 415. Investigative reports "are closed records until the investigation becomes inactive." **Section 610.100.2.** The next subsection then contains some limited circumstances in which an investigative report can remain closed or be redacted, even after the investigation is inactive. See **Section 610.100.3** (allowing closure or redaction of records which would otherwise be open where disclosure creates safety risk, jeopardizes an investigation, or reveals information relating to law enforcement techniques and proce-

dures) [5]; *see also Guyer*, 38 S.W.3d at 414, 415 (stating investigative reports are open records once investigation is inactive, subject to redaction under Section 610.100.3).[6] While Appellants argue the Internal Affairs report falls under these sections and should be disclosed, the City maintains that the Internal Affairs report actually constitutes personnel and disciplinary records, exempt from disclosure under Section 610.021.3 and 13.

In *Guyer v. City of Kirkwood*, the Missouri Supreme Court specifically considered the question of whether an internal police report fell under **Section 610.100.2** (investigative report open once investigation inactive) or **Section 610.021** (personnel records exempt from disclosure). 38 S.W.3d 412. There, a police officer who had been under investigation regarding a complaint of criminal conduct, which the department had concluded was unfounded, requested the records of the investigation under the Sunshine Law. *Id.* at 413. The Missouri Supreme Court noted that the requested documents at issue, which were not part of the record on appeal, could qualify both as investigative reports and personnel records. *Id.* at 414.

The Supreme Court examined the two sections above and found that, based on the permissive language of Section 610.021's exemptions (allowing public governmental body to close records "[e]xcept to the extent disclosure is otherwise required by law") and the express public policy statement of the Sunshine Law in favor of open records (Section 610.011.1), this public policy "should be used as a tiebreaker in favor of disclosure when records fit equally well under two specific but opposite provisions of the Sunshine Law." *Id.* The court concluded that the requirement of open investigative reports in Section 610.100.2 (investigative reports are open records once investigation is inactive) overrides the permissive exemption for personnel records in Section 610.021. *Id.*

However, the Supreme Court in *Guyer* did not consider any application of Section 610.024, which requires a public body to separate exempt and non-exempt portions of a public record and to make the non-exempt portions available.[7] Further, we do not find that the conclusion in *Guyer*, expressly providing only for redaction of the documents under Section 610.100.3 (based on risks to safety of involved parties or confidentiality of police procedures), necessarily excluded other limitations under the law on information that can be disclosed.[8] Research reveals no case law examining the question of whether Section 610.024 applies to investigative reports.

5. Here, the trial court will have to determine upon remand whether the records remain closed or any redaction is warranted under Section 610.100.3.

6. Though not directly applicable here, the parties have referred to Section 610,100.5 in their arguments, so we note its language here, and address their arguments, *infra*. This subsection applies to investigative reports that are "otherwise closed," for example, a report concerning an investigation that has not yet concluded. Section 610.100.5 provides a balancing test for disclosure of such reports, and it provides that "the investigative report in question may be examined by the court in camera." Section 610.100.5 (court weighs

benefit to person bringing action or to public against harm to public, to law enforcement, or to any person identified in report).

7. Additionally, none of the briefs submitted to the court in *Guyer* raised the issue of the applicability of Section 610.024 to the documents at issue there. Presumably, this is because there the requesting party was the police officer, and any personnel or disciplinary records at issue would have been his own.

8. For example, the Supreme Court did not mention that if the report contained social security numbers, those should be redacted as well. Section 610.035.

Based on the plain language of the statute, we conclude that it does.

■ Again, Section 610.010 contains the definition of a "public record" and applies to the term "as used in this chapter." The definition is quite broad, encompassing "any record ... retained by or of any public governmental body." An investigative report is "a record ...," Section 610.100.1(5), retained by a type of public governmental body: a law enforcement agency. Thus, an investigative report is a type of public record under the statute. *See also Guyer*, 38 S.W.3d at 414 (Section 610.100 discusses "specific type of public record"). Section 610.024.1 begins, "[i]f a *public record* contains material...." (emphasis added). Thus, Section 610.024.1 applies to investigative reports, requiring the public governmental body to separate any exempt and non-exempt portions of the report, and to disclose the latter.

■ This may seem at first look to contradict *Guyer*. However, according to the Missouri Supreme Court there, where a document "fits equally" under an exemption and a provision requiring disclosure, the document should be disclosed, notwithstanding the fact that an exemption would otherwise apply. *Guyer*, 38 S.W.3d at 414. Thus, to the extent an internal police report, or portions thereof, can equally be considered *both* a personnel record and an investigative report, it, or those portions, should be disclosed. However, if the docu-

ment can be separated into portions that qualify as one *or* the other, then any portion that can be considered exempt under Section 610.021, subsections 3 and 13 pertinent herein, and not part of the criminal investigation, may be withheld under Section 610.024.[9]

b. *Existence of Factual Dispute*

■ Turning to the circumstances here, because our review requires us to take a fresh look at both elements of summary judgment, we first evaluate whether there is a genuine dispute regarding a material fact. *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. Such a dispute "exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. Here, the parties both assert that there is no dispute over material facts, because it is undisputed that Laut made a complaint, that Chief Shockey ordered an Internal Affairs investigation, and that the investigation is inactive. We disagree that these undisputed facts leave no disputed material fact.

Specifically, the parties disagree about what is contained in the Internal Affairs report following the investigation. The City asserts that the only Internal Affairs inquiry concerned the employees' fitness to perform their job duties; there was no criminal investigation. Thus, according to

9. We acknowledge this distinction may prove difficult to apply, but that doing so not only fulfills the plain language of the statute, but also serves an important policy concern that is particularly present in the context of investigative reports involving law enforcement officers. This is because any citizen complaint against a police officer contained in an internal affairs report can involve an alleged criminal offense, as literally any complaint can be simultaneously labeled a criminal violation of the complainant's civil rights under federal law. Investigations of all such complaints would therefore result in investigative reports, and disallowing application of Section 610.024 would essentially result in police officers having no right to personnel or disciplinary privacy under the Sunshine Law. We find such a result is not mandated by the plain language of the statute. Also, we note that Section 610.024.2 encourages a public governmental body to design public records with the distinction between exempt and non-exempt information in mind, so that open portions are more easily distinguishable from exempt portions.

the City, the Internal Affairs report does not constitute an "investigative report," but rather falls into the categories of personnel and disciplinary records, exempt from disclosure under Section 610.021.3 and 13.

Appellants disagree, pointing out that the Internal Affairs investigation took place in response to a complaint of criminal activity, because the unauthorized access of a law enforcement computer system is a federal crime under Title 18 U.S.C. Section 1030(a)(2), (4) (2012).[10] Appellants argue that because the complaint asserted criminal conduct, this Court may presume that the investigation was focused on that conduct. *Guyer*, 38 S.W.3d at 415 (remanding to determine whether complaint implicated officer in criminal conduct; finding if so, trial court should presume investigation centered on that alleged criminal conduct). Thus, Appellants argue the Internal Affairs report is an "investigative report" of an inactive investigation, and therefore must be disclosed.

Our review of the record reveals competent evidence that supports two differing yet plausible views as to the content of the Internal Affairs report, which is material to the determination of whether it should be disclosed. This is primarily based on the affidavit of Chief Shockey, where he attests, "I received a complaint from [Laut], ... [about] two City employees, [Darnell] and [Rodgers], regarding their access to REJIS." He continues, "After receiving the complaint, I ordered that an Internal Affairs Investigation be commenced for the purpose of determining their fitness to perform their job duties."

It is reasonable to infer from Chief Shockey's statements that upon receiving Laut's complaint of improper access to REJIS, Chief Shockey ordered an investigation into the alleged criminal conduct. *See Guyer*, 38 S.W.3d at 415 (court can presume upon remand investigation concerned criminal conduct if such conduct alleged in complaint). Moreover, Chief Shockey's affidavit makes no mention of any inquiry into personal relationships affecting job performance, but rather he ordered the investigation in response to the allegation of improper access to REJIS. It is reasonable to infer that Chief Shockey's determination of the employees' fitness to perform their job duties was based, at least in part, on an evaluation of whether they had abused their access to REJIS. If true, that investigation into alleged criminal conduct would classify the resulting Internal Affairs report as an investigative report, an open record subject only to the specific types of redactions, above. *See* Section 610.100.3, 610.024.

However, Chief Shockey's affidavit also states that he ordered an internal inquiry regarding job performance. Even though the Internal Affairs investigation came about after Laut's complaint alleging criminal conduct, it is possible the Internal Affairs report evaluated job performance independently of any investigation into alleged criminal conduct. If true, the report would be more appropriately classified as a personnel record. With no other law requiring disclosure of such a public record, the City would be permitted to withhold it under Section 610.021.3 and 13.

Thus, from the record, there is a genuine dispute concerning whether the Internal Affairs report is directed to alleged criminal conduct and therefore constitutes an investigative report. *See Guyer*, 38 S.W.3d at 415. As the subject of the

---

10. Appellants' petition and motion for summary judgment also alleged that one of the City employees may have impersonated a law enforcement officer, which is a state crime under Section 575.120, but they do not discuss this claim on appeal.

Internal Affairs report is central to whether the City was entitled to judgment as a matter of law regarding disclosure of this document, the existence of this factual dispute precluded summary judgment.[11] We vacate the trial court's summary judgment as it relates to the Internal Affairs report.

### c. Remedy and Instructions upon Remand for Internal Affairs Report

█ Neither party believes remand is necessary despite their notable disagreement over the nature of the Internal Affairs report. Both parties rely on burdens and presumptions to argue that summary judgment is nevertheless appropriate given the circumstances. We disagree.

First, the City argues that Appellants had the burden to establish that the Internal Affairs investigation was related to criminal conduct by requesting an in camera review under Section 610.100.5 (a means of accessing investigative reports that are "otherwise closed"; allowing in camera review by the trial court).[12] However, Section 610.100.5 assigns no burden to either party to request an in camera review. Further, the Sunshine Law contains no presumption permitting the trial court to close a disputed record that it has not seen.[13] This is not surprising, given the express public policy of the Sunshine Law in favor of open government. Section 610.011.1.

Additionally, the City distinguishes *Guyer* because there, the officer who was the subject of the investigation was the requesting party; whereas here, Appellants are third parties. *See Guyer*, 38 S.W.3d at 413. However, the statute contains no limitation regarding who may request investigative reports that are open under the Sunshine Law.[14] Rather, the only limita-

---

**11.** We also note the parties confirmed the existence of this factual dispute in their respective supporting documents at the summary judgment stage. In the City's statement of uncontroverted facts, it stated that Chief Shockey "ordered an internal affairs investigation to evaluate the fitness of the employees to perform their job duties." In Appellants' response, they "deny that that was the real reason" for the investigation, because Laut's complaint concerned criminal conduct, and because the Missouri Supreme Court stated that when criminal conduct is alleged, it should be presumed that that conduct was the subject of the investigation. *Guyer*, 38 S.W.3d at 415. Additionally, Appellants denied the City's statement that Appellants requested "personnel records," in that Appellants denied the documents were "closed personnel records as that term is defined under the Sunshine [Law] and related case law."

**12.** The specific statutory language is this: "The investigative report in question may be examined by the court in camera." Section 610.100.5.

**13.** The City also makes a policy argument in favor of such a burden, arguing that opening records to those who merely allege criminal conduct undermines the confidentiality of police officers' personal information. However, the statute only opens records when alleged conduct is investigated, and that includes records that conclude there was no wrongdoing. Additionally, issues of policy must be addressed to the state legislature, and we are tasked only to give effect to the statute as written by the legislature. *Spradlin v. City of Fulton*, 982 S.W.2d 255, 261 (Mo. banc 1998) (citing *Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 620 (Mo. banc 1977)). It is also apparent that the corresponding risk-that the police department could label all of its records personnel records and thus avoid disclosure-is avoided by the legislature's decision to refrain from ascribing any presumptions as to the nature of documents not before the court.

**14.** Similarly, the trial court indicated during its hearing on the summary judgment motions that the fact no criminal charges were brought against the employees meant the records should be closed. The Sunshine Law provides for confidentiality when arrests do not result in criminal charges, or when criminal charges do not result in conviction and sentence. Section 610.100.2 (arrest report

tions relate to who may access records that are otherwise closed. *See* Section 610.100.4–6.

Likewise, Appellants argue that we should enter summary judgment in their favor. Appellants rely on the Missouri Supreme Court's presumption in *Guyer* that if the citizen complaint implicated the officer in criminal conduct, the resulting report concerned that criminal conduct, and thus the resulting report should be disclosed. 38 S.W.3d at 415. However, the dispute here is slightly different than in *Guyer*. In *Guyer*, the parties did not appear to dispute that the investigation concerned the specific subject of the citizen complaint. Rather, the parties disagreed as to whether the complaint itself alleged any criminal conduct. Here, the parties agree that Laut's complaint alleged improper REJIS access, but dispute whether the subsequent Internal Affairs investigation related to that complaint. Because, unlike *Guyer*, the record here supports the existence of a factual dispute regarding the substance of the Internal Affairs report, the *Guyer* presumption does not operate to mandate disclosure as a matter of law.

Thus, we remand for the trial court to resolve this factual dispute by examining the Internal Affairs report in camera. Rather than mandated by a particular section of the Sunshine Law here, in camera review is a practical remedy that would resolve any factual dispute, while at the same time maintaining confidentiality of documents that may be exempt from dis-

closure under the Sunshine Law. *See Chasnoff v. Bd. of Police Comm'rs,* 334 S.W.3d 147, 150 (Mo.App. E.D.2011) (noting trial court reviewed investigative file log of 59 documents in camera to determine disclosure under Sunshine Law); *Bill,* 935 S.W.2d at 663 (noting trial court granted in camera review of retirement benefit records of government employees; subsequently finding records exempt from disclosure under Sunshine Law); *accord State ex rel. Lester E. Cox Med. Ctr. v. Keet,* 678 S.W.2d 813, 815 (Mo. banc 1984) (in discovery context, trial court has discretion to examine privileged documents in camera to determine whether redaction and production of documents is appropriate); *State ex rel. Fusselman v. Belt.* 893 S.W.2d 898, 901 (Mo.App. W.D.1995) (holding trial court should have reviewed records requested by criminal defendant in camera to determine whether they contained exculpatory evidence while protecting against unnecessary publication of privileged information).

In light of the Sunshine Law and the Missouri Supreme Court's interpretation of Sections 610.100 and 610.021 in *Guyer,* if the Internal Affairs report qualifies equally as an "investigative report" under the statutory definition and as a disciplinary or personnel record, and it contains any of the information requested by Appellants, then it must be disclosed. *See Guyer,* 38 S.W.3d at 414 (where records fit equally under exemption and statute requiring disclosure, express public policy requires disclosure). As discussed above,

becomes closed if person is arrested and not charged within 30 days following arrest); Section 610.105 (providing closing of records when person is arrested and charged but case is dismissed, accused is found not guilty, or imposition of sentence is suspended). However, the law does not have a similar provision regarding investigations that do not result in arrest or criminal charges, but rather

provides that when a criminal complaint is investigated and the investigation is inactive, the report of that investigation is an open record, notwithstanding the result. Section 610.100.2. This may be a very undesirable inconsistency, but if so, it is the legislature's to resolve. We must give effect to the statutory language as written by the legislature. *Spradlin,* 982 S.W.2d at 261.

this disclosure is also subject to any allowable redaction under Section 610.100.3 (safety of involved persons and confidentiality of police procedures) and Section 610.024 (exempt portions must be separated from non-exempt portions; and exempt portions, such as those exempt under Section 610.021.3 and 13, may be withheld).

### Attorney's Fees and Costs

Finally, Appellants argue the trial court erred in denying their request for civil penalties, costs, and attorney's fees. These remedies are available in the event the trial court finds a violation of the Sunshine Law. *See* Section 610.100.5 (investigative reports) and 610.027 (other public records). Because at this point we cannot determine as a matter of law whether any violation occurred, the trial court must reconsider this issue upon remand. We deny Appellants' motion for attorney's fees on appeal for the same reason.

### Conclusion

The exemptions to disclosure of documents under Section 610.021.3 and 13 of the Sunshine Law may only be applied after determining whether disclosure of documents is otherwise required by law. Based on the record here, the evidence was not sufficient for the trial court to determine whether the Sunshine Law's exemptions could apply to all of the documents responsive to Appellants' requests. Moreover, a genuine issue of material fact exists regarding whether the Internal Affairs report qualifies as an investigative report or a personnel record. For these reasons, we vacate the summary judgment of the trial court as it relates to the documents responsive to Appellants' request; but specifically exclude any public records, besides investigative reports, containing only the reasons for discipline of the City employees, as that type of exempt document is not otherwise required to be disclosed by law. We remand with instructions for the trial court to examine the remaining responsive documents in camera, and to determine which documents or portions of documents, if any, must be disclosed under the Sunshine Law in accordance with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

LISA S. VAN AMBURG, P.J., concurs.

PATRICIA L. COHEN, J., concurs.